IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GIZACHEW T. TESSO, §
 §
 Plaintiff, §
 § Civil Action No. 3:11-CV-0246-D
VS. §
 §
WESTWOOD COLLEGE, et al., §
 §
 Defendants. §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Gizachew T. Tesso ("Tesso") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., alleging claims of racial discrimination, national origin discrimination, and retaliation against his former employer, defendant Westwood College, and its parent company, defendant Alta Colleges, Inc. ("Alta"), defendants move for summary judgment.  For the reasons that follow, the court grants in part Westwood College's motion as to the discrimination and retaliation claims and raises *sua sponte* that Westwood College is entitled to summary judgment as to the balance of the grounds of Tesso's discrimination and retaliation claims.  The court grants the motion as to Tesso's claims against Alta.  Tesso may respond to the grounds the court raises *sua sponte*.

I

Tesso, a black male of Ethiopian origin, was formerly employed as a faculty member at Westwood College's Dallas campus.[1] He taught various courses in computer aided design ("CAD") and construction, including residential construction, CAD portfolio review, construction, residential architectural design, and digital walkthrough and visualization.

According to Tesso's briefing and interrogatory responses, he bases his discrimination and retaliation claims on the following alleged incidents: (1) in May 2008 Margaret Taylor ("Taylor"), the former Dean of Education at the Westwood College Dallas campus, yelled at him in front of his class of "all white students;" (2) in October 2008 Taylor berated and tried to penalize him for missing a faculty meeting; (3) in the fall of 2008 Taylor deliberately lost his tuition reimbursement paperwork; (4) in early 2009 Taylor set his Thursday schedule from 6:30 a.m. to 8:00 p.m.; (5) in July 2009, after Tesso returned from a conference concerning Ethiopians at which he was scheduled to speak but did not due to time constraints, Taylor called him a liar and docked two days' pay; (6) in August 2009 he "continued working . . . long days and substituting for [other] instructors;" (7) in the May term of 2010 he "continued to receive [an] onerous schedule of Mondays, Wednesdays and Fridays from 7 am to 6pm and Tuesdays from 12 to 6pm;" (8) in June 2010 "Taylor had [his]

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to Tesso as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

credentials re-evaluated even though they had been evaluated in 2006 by the same regional

accrediting council," and "[w]hen [he] complained that it was done incorrectly, she told

[him] to provide additional information;" (9) from June to July 2010 Taylor continued

working long hours; (10) in June 2010 he was ordered to return to work even though he was

scheduled off for two days pursuant to a doctor's order; (11) in July 2010 he was

"[s]cheduled to work all day, attend campus meeting and cover registration"; (12) in July

2010, when the reevaluation of his credentials came back with the same errors and he again

asked why the reevaluation was necessary and if Taylor would send his credentials to a

different evaluator, she told him that "if [he] wanted another evaluation [he]'d have to get

it from another college;" (13) after Tesso filed a complaint with the Equal Employment

Opportunity Commission ("EEOC") on September 7, 2010, Taylor refused to permit Tesso

to participate in a faculty meeting on September 13, 2010; and (14) Taylor and Paul Kepic

("Kepic"), the President of the Westwood College Dallas campus, terminated Tesso's

employment on October 7, 2010.  Ds. Jan. 25, 2012 App. 94.

Tesso's claims and defendants' motion for summary judgment focus primarily on

whether his termination was lawful.  In 2010 Westwood College, in an effort to align its

faculty credentialing with the guidelines established by the Higher Learning Commission,

revised its Faculty Credentialing Policy ("Policy") to require "all faculty teaching in

programs at the diploma, associate, bachelor and master degree levels [to] have the

appropriate credentials."  Ds. Jan. 25, 2012 App. 69; *see also id.* at 36 (Taylor testified that

"the changes [in the Policy were] applicable to all the instructors").  The Policy required that

a faculty member teaching "[b]achelor and associate degree transfer courses" "have [a] graduate degree in the subject area taught OR a graduate degree AND a minimum of 18 semester/27 quarter graduate credits related to course/s to be taught, except areas where graduate degrees [are] not readily available." *Id.* at 69. Westwood College audited the credentials of the Dallas faculty in accordance with the Policy. As part of this process, it hired Global Credential Evaluators, Inc. ("Global Credential"), "an independent, third-party credential evaluator" and "a member of the National Association of Credential Evaluation Services," to translate foreign academic and experiential credentials into an equivalent degree from a United States educational institution.[2] *See id.* at 50-51.

Global Credential examined Tesso's degrees from Addis Abab University in Ethiopia and Odessa Civil Engineering Institute in Russia and concluded in June 2010 that the degrees, respectively, were "equivalent to an Associate of Science in Drafting Technology and a Bachelor of Science in Architecture" from "a regionally accredited university in the U.S." *Id.* at 74. In other words, Tesso "lacked the equivalent of a United States masters degree which was necessary to continue teaching bachelor and associate degree transfer courses as a full-time faculty member under the new . . . Policy." *Id.* at 41. Following a reevaluation[3] and reaffirmation[4] by Global Credential in July 2010, Westwood College

---

[2]According to Evelyn Falk, Vice President of Human Resources, "Westwood [College] did not participate in or provide input into the evaluation of Plaintiff's (or any other instructor's) credentials." Ds. Jan. 25, 2012 App. 51.

[3]According to defendants, because Tesso disagreed with Global Credential's original report, "Westwood [College] sent another package on his behalf to Global Credential,"

- 4 -

terminated Tesso on October 7, 2010. Tesso's notice of termination states that he was "not credentialed to teach courses at Westwood College." *Id.* at 84.

Defendants move for summary judgment dismissing all of Tesso's claims. They contend that Tesso cannot recover on his race- and national origin-based discrimination claims for the alleged incidents that occurred before November 11, 2009, which is 300 days before he filed his first charge of discrimination on September 7, 2010. They also posit that Tesso's discrimination claims fail because he is unable to establish a prima facie case and, even if he can, defendants have a legitimate, nondiscriminatory reason for their employment decisions that is not pretextual. And regarding the retaliation claim, defendants contend that Tesso cannot establish a causal connection between his protected activity of filing a charge of discrimination and the adverse employment action of termination, and that, even if he can, defendants have a legitimate, nondiscriminatory reason for their action that is not pretextual. Defendants maintain that the claims against Alta should be dismissed because Tesso has not exhausted his administrative remedies, Tesso lacks evidence demonstrating that he was

---

"granted . . . Tesso an extension of . . . time to submit additional materials that he believed accurately reflected his academic credentials," and, "even though . . . Tesso . . . failed to timely deliver the materials, . . . allowed him to tardily submit the same and be involved in packaging and mailing the materials to allay his concerns that [Westwood College] was not including all of his credentials." Ds. Jan. 25, 2012 App. 42. Nonetheless, in July 2010 Global Credential reaffirmed its original findings.

[4]After receiving the reevaluation by Global Credential, Taylor emailed Susan Mabry ("Mabry"), the Global Credential evaluator, seeking confirmation that Tesso's Russian degree did not qualify as a 5-year bachelor/master Architecture program offered by certain U.S. institutions. Mabry replied that Tesso's degree "is only a Bachelor's degree." Ds. Jan. 25, 2012 App. 79.

employed by Alta, and the allegations against Alta are not distinct from those against Westwood College and thus fail for the same reasons.  Tesso opposes the motion.

## II

Because defendants are moving for summary judgment on claims as to which Tesso will bear the burden of proof at trial, they can obtain summary judgment as to the claim in question by pointing the court to the absence of evidence on any essential element of the claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once they do so, Tesso must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Tesso on the claim in question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Tesso's failure to produce proof as to any essential element of the claim renders all other facts regarding that claim immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment for defendants is mandatory as to the claim in question if Tesso fails to meet this burden. *Little*, 37 F.3d at 1076.

The court can raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords Tesso notice and a fair opportunity to respond.  *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

III

The court examines first defendants' contention that Tesso cannot recover on his discrimination claims for the alleged incidents that occurred before November 11, 2009, which is 300 days before he filed his first charge of discrimination on September 7, 2010.

Under Title VII, "the date for determining timeliness [is] 300 days prior to the filing of the first filed charge." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *see also* 42 U.S.C. § 2000e-5(e)(1).  Any conduct occurring prior to the 300 days is time-barred.  *See Frank*, 347 F.3d at 136.  It is undisputed that Tesso filed his first charge of discrimination on September 7, 2010.[5]  Defendants thus posit that Tesso is barred from asserting conduct that occurred before November 11, 2009, which is 300 days before the September 7, 2010 charge. Based on this reasoning, defendants assert that the first six incidents on which Tesso relies are barred because they occurred before November 2009.

Tesso neither responds to this argument nor cites evidence that would permit a reasonable trier of fact to find that these incidents were part of a continuing violation that lasted into the limitations period.  Accordingly, the court concludes that the six incidents in question are time-barred, and it dismisses Tesso's discrimination claims to the extent they

---

[5]According to defendants' evidence, Tesso filed a charge of discrimination on September 7, 2010 with the Texas Workforce Commission ("TWC"), which was concurrently filed with the EEOC, alleging discrimination based on race and national origin. The EEOC issued a dismissal and notice of rights on November 9, 2010.  After Tesso was terminated, he filed a second charge of discrimination based on race, national origin, and retaliation for his first EEOC charge.  This charge was filed in October 2010 with the TWC, and was concurrently filed with the EEOC.  The EEOC issued a dismissal and notice of right to sue on March 22, 2011.

are based on these incidents.  *See Ramirez v. Univ. of Tex. Sw. Med. Ctr.*, 2005 WL 1017820, at *3 (N.D. Tex. Apr. 28, 2005) (Fitzwater, J.) (holding that plaintiff could not recover under Title VII for conduct that took place 300 days before charge of discrimination was filed, and that plaintiff's contention that it was a continuing violation was conclusory and not supported by evidence).

IV

The court turns next to defendants' contention that Tesso is unable to establish a prima facie case of race- or national origin-based discrimination and, even if he can, that defendants have a legitimate, nondiscriminatory reason for their employment decisions.

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  To prevail on his discrimination claim, Tesso must present direct or circumstantial evidence that his race or national origin was a motivating factor for defendants' adverse employment action.  *See, e.g., Siddiqui v. AutoZone West, Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (addressing Title VII claims for rase-based harassment, discrimination based on race, ethnicity, national origin, and religion, and retaliation).  "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'"  *West v. Nabors Drilling USA,*

*Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (Fitzwater, J.) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [a defendants'] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. Tesso does not specifically refer in his motion or amended complaint to any direct evidence of discrimination.[6] The court holds that he is relying on circumstantial evidence to prove intentional discrimination.

## B

Because Tesso is relying on circumstantial evidence, he must establish discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case). As modified, *McDonnell Douglas* consists of three stages. First, Tesso must establish a prima facie case of discrimination, which "creates a presumption that [defendants] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Second, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the employment action taken against Tesso. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Defendants' burden is one of production, not proof, and involves no credibility assessments.

---

[6]Moreover, when Tesso was asked whether there was direct evidence that a decision about his credentialing was made on the basis of race or national origin, he responded that he "really [did not] know" and that he believed that there was discrimination because he did not know anyone who was treated like he. Ds. Jan. 25, 2012 App. 24. This statement corroborates that his claims are based on circumstantial evidence.

*See, e.g., West*, 330 F.3d at 385.  Third, if defendants meet their production burden, Tesso may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative.  *See Rachid*, 376 F.3d at 312.  Under the pretext alternative, Tesso must "offer sufficient evidence to create a genuine issue of material fact . . . that [defendants'] reason is not true, but is instead a pretext for discrimination."  *Id.* (internal quotation marks and citation omitted).  Under the mixed-motives alternative, Tesso must offer sufficient evidence to create a genuine issue of material fact "that [defendants'] reason, while true, is only one of the reasons for [their] conduct, and another motivating factor is [Tesso's] protected characteristic."  *Id.* (internal quotation marks and citation omitted).

V

To establish a prima facie case of discrimination, Tesso may show that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside the protected class, or, in the case of disparate treatment, other similarly situated employees were treated more favorably.  *See, e.g., Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).

Tesso bases his discrimination claims on the following remaining incidents (i.e., (7) through (14)): his credentials ((8) and (12)); his termination ((14)); several instances in which he was required to work long hours ((7), (9), and (11)); requiring him to return to work despite a doctor's order ((10)); and barring him from participating in a faculty meeting ((13)).

Defendants argue that Tesso cannot establish a prima facie case of discrimination for at least a few of these. In particular, defendants contend that certain incidents do not constitute adverse employment actions, that Tesso's discharge was lawful because he was no longer qualified for his position, and that Tesso is unable to demonstrate that he was treated less favorably than other similarly-situated employees regarding his termination and hours.

## VI

The court examines first defendants' argument that certain alleged incidents do not constitute adverse employment actions, the third element of a prima facie case.

## A

"[A] plaintiff must show that he was subject to an ultimate employment decision to establish a prima facie case of discrimination." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *4 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F. 3d 644 (5th Cir. 2012) (on rehearing). The Fifth Circuit "has a strict interpretation of the adverse employment element of [the] prima facie intentional discrimination case" under Title VII. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *see also Dixon v. Moore Wallace, Inc.*, 2006 WL 1949501, at *8 (N.D. Tex. July 13, 2006) (Fitzwater, J.), *aff'd*, 236 Fed. Appx. 936 (5th Cir. 2007). For purposes of a discrimination claim brought under these statutes, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (per curiam) (alteration in original; internal quotation marks and citation omitted). "[A]n

employment action that does not affect job duties, compensation, or benefits is not an adverse employment action for purposes of a discrimination claim under Title VII." *Dixon*, 2006 WL 1949501, at *8 (quoting *Pegram*, 361 F.3d at 282) (internal quotation marks omitted); *see also Arrieta*, 2008 WL 5220569, at *5 (holding that "disciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions").

B

Defendants move for summary judgment dismissing Tesso's discrimination claims to the extent they are based on Taylor's refusal to permit Tesso to participate in the faculty meeting.[7] Tesso does not attempt to refute defendants' argument.[8] The court holds that the refusal to permit Tesso to participate in the faculty meeting does not qualify as an adverse employment action, given that Tesso has made no showing that it "affect[s] job duties, compensation, or benefits." *See Dixon*, 2006 WL 1949501, at *8 (internal quotation marks and citation omitted). The court dismisses the discrimination claims to the extent based on this predicate. *See id.* at *9.

The court raises *sua sponte* that defendants are entitled to dismissal to the extent the discrimination claims are based on instances when Tesso was required to work long hours.

---

[7]Defendants also move for summary judgment concerning the incidents that the court has already addressed above and as to which it has granted summary judgment.

[8]Although Tesso does address this element in his brief, his discussion is limited to his termination. *See* P. Br. 13 ("It is undisputed that Tesso belongs to a protected class and suffered an adverse employment decision when he was terminated by Defendants.").

Even if Tesso could adduce supporting evidence, "[m]erely changing [one's] hours, without more, does not constitute an adverse employment action." *Benningfield v. City of Hous.*, 157 F.3d 369, 377 (5th Cir. 1998); *see also Minor v. Alcatel USA Res., Inc.*, 2007 WL 1452895, at *2 (E.D. Tex. May 17, 2007) (in addressing plaintiff's allegations that she was assigned larger workload, holding that "plaintiff fail[ed] to produce evidence that would establish that her work load represented an 'ultimate employment decision' on the part of her employer").[9]

The court also raises *sua sponte* that defendants are entitled to dismissal to the extent Tesso's discrimination claims are based on requiring him to return to work despite a doctor's contrary order. Even assuming that Tesso could produce supporting evidence, this does not qualify as an adverse employment action. *Cf. Washington v. Veneman*, 109 Fed. Appx. 685, 689 (5th Cir. 2004) (per curiam) (reaffirming that "scheduling training on a Holiday Program day" was not adverse employment action) (citing *Hernandez v. Crawford Bldg. Material*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (per curiam)).

To the extent Tesso is basing his discrimination claims on the evaluations of his credentials alone, the court raises *sua sponte* that defendants are entitled to dismissal of the claims. Even assuming that Tesso could adduce supporting evidence, this does not qualify as an adverse employment action. *Cf. Mora v. Ashcroft*, 142 Fed. Appx. 206, 207 (5th Cir.

---

[9]Even if Tesso were able to demonstrate that this is an adverse employment action, his claim is subject to dismissal on other grounds. Defendants assert that Tesso cannot establish that, in being required to work long hours, he was treated less favorably than similarly situated instructors outside his protected class. Tesso does not respond to this argument in his brief.

2005) (per curiam) ("[N]either the investigation nor the letter amount to an adverse employment action.") (citing cases); *Arrieta*, 2008 WL 5220569, at *11 ("[N]egative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions.").

In summary, the court dismisses Tesso's discrimination claims to the extent they are based on Taylor's refusal to permit Tesso to participate in the faculty meeting, and it raises *sua sponte* that the claims must also be dismissed to the extent they are based on requiring him to work long hours, ordering him to return to work despite a doctor's contrary order otherwise, and evaluating his credentials.

VII

The remaining ground of Tesso's discrimination claims pertains to his termination. Defendants contend that Tesso cannot establish the prima facie elements that he was qualified for the position and that he was treated less favorably than other similarly-situated employees. Because the claims fail on other grounds, the court will assume *arguendo* that Tesso has established a prima facie case. *See Arrieta*, 2008 WL 5220569, at *11. The burden has therefore shifted to defendants to proffer a legitimate, nondiscriminatory reason for Tesso's termination.

Defendants have produced evidence that Tesso was terminated because he did not have the requisite graduate degree, as required under the Policy that was applicable to all faculty instructors. They have met their burden of producing evidence of a legitimate, nondiscriminatory reason for Tesso's termination. *See, e.g., Smith v. Stokes Distrib. Co.*, 166

F.3d 340, 1998 WL 912166, at *1 (5th Cir. 1998) (unpublished opinion) (noting that not promoting employee "because he lacked the requisite license [was] a legitimate, nondiscriminatory reason for [employer's] refusal to promote him").

Tesso asserts that defendants' reason is pretextual. In particular, Tesso argues that Westwood College did not evaluate one of his degrees—a master's degree in city and regional planning he received from the University of Texas, Arlington ("UTA") in 2005—but instead based its termination on his foreign degrees, as translated by Global Credential. Tesso posits that his UTA master's degree would have satisfied the Policy requirements for a CAD instructor.[10] He also questions why Westwood College would permit him to begin teaching the fall term if Global Credential determined in June and July that he was not qualified to instruct under the Policy.[11]

_____

[10]Although the UTA master's degree is in the field of city and regional planning, he maintains on two grounds that it is sufficient for a CAD instructor. First, he asserts that Taylor and Kepic were unable to identify the requisite master's degree for a CAD instructor, and that the Policy does not address this, merely stating in the "User's Guide Delineated by Degree or Subject" that an "Acceptable Masters Degree" in the "Cad" course area is as follows: "Bachelor degree preferred AND significant and appropriate course work [OR] Associate Degree required [AND] significant and appropriate course work." P. App. 60 (emphasis omitted). Second, Tesso contends that "Architecture, Urban, City and Regional Planning are related fields of stud[y] for [CAD]." P. Br. 6.

[11]Tesso also asserts that Westwood College's reason for terminating him lacks credence under *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 415 (5th Cir. 2007), because it "shifted." P. Br. 15. He asserts that, in Westwood College's position statement to the EEOC, defendants stated that Tesso was not qualified to instruct because "[he] did not possess a master's degree." *Id.* And he posits that defendants are now arguing that he "did not possess '. . . the equivalent of a United States master's degree *according to the evaluation by Global Credential*.[']" *Id.* at 16 (emphasis in original). The court disagrees.

- 15 -

Even assuming *arguendo* that a master's degree in city and regional planning can satisfy the Policy as an appropriate degree for a CAD instructor, Tesso has failed to adduce sufficient evidence to enable a reasonable trier of fact to find that he received a UTA master's degree.  In support of his assertion, Tesso cites only the deposition of Taylor. Taylor was asked to read the first page of an "Accrediting Council for Independent Colleges and Schools" ("ACICS")[12] data sheet.  P. App. 18.  According to Taylor, this sheet included in Tesso's educational information "UTA, City and Regional Planning, master's degree, May of 2005."  *Id.*  Defendants cite the next page of Taylor's deposition, in which she testified that the document was "invalid" and "not one that was ever approved to be in [our] file."  Ds. Mar. 14, 2012 App. 2.  Instead, it appears that this document may have been created by Tesso for submission to Westwood College.  Furthermore, Tesso has produced a "Data Sheet for Staff and Faculty Members" that lists his masters degree from UTA.  P. App. 26.  It appears that this document is the same one that Taylor examined in her deposition, since it is identified at the bottom by the same exhibit number and the second page contains the

---

Westwood College stated in the position statement that Global Credential concluded that his foreign credentials were equivalent to an Associate of Science and Bachelor of Science and, as a result, Tesso lacked the "requisite masters degree."  P. App. 79. Accordingly, even assuming that Tesso's reading of *Burrell* is correct, his argument lacks force because Westwood College did represent in its position statement that it based its determination on Global Credential's evaluations.

[12]Although Taylor referred to this institution as the "Accrediting Commission of Colleges and Independent Schools," P. App. 18, it appears that it is actually the "Accrediting Council for Independent Colleges and Schools."

"ACICS" emblem.[13]  This document further suggests that it was filled out by Tesso, because, *inter alia*, it directs the writer to "List each position *you* have held for the past ten years," and it requires the "Staff Member" to sign at the end and state: "I certify that the above statements are true, to the best of my knowledge."  *Id.* at 26-27 (emphasis added).

Without competent evidence, a reasonable jury could not find that Tesso received a master's degree in city and regional planning from UTA in 2005 and find on that basis that defendants' explanation is pretextual.  Accordingly, the court grants defendants' motion for summary judgment as to the discrimination claims to the extent they are based on his termination.

### VIII

Tesso also sues defendants on a retaliation claim that is based on the same fourteen grounds.

### A

Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).  Tesso offers no direct evidence of retaliation, so he must proceed under the *McDonnell Douglas* burden shifting paradigm.  He must demonstrate a prima facie case for

---

[13]The first page does not contain this emblem because it appears that it was covered over in the copy filed with the court.

retaliation by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the initial requirement that a plaintiff show a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If Tesso establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If defendants meet their production burden, Tesso must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112,

1122 n.8 (5th Cir. 1998); *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4.

B

Tesso states in his interrogatory response that his retaliation claim is based on the same fourteen incidents as were his discrimination claims. Defendants appear to move for summary judgment solely to the extent the retaliation claim is based on Tesso's termination. Because of this, the court raises *sua sponte* that defendants are entitled to summary judgment dismissing the retaliation claim to the extent it is based on the other thirteen incidents.

First, Tesso has not alleged that he was engaged in a protected activity with respect to at least the first twelve incidents. *Cf. Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) ("'Protected activity' is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."). Tesso cannot use his filing of the first charge of discrimination as the predicate protected activity because this occurred on September 7, 2010, after the alleged incidents in question.

Second, several of these incidents, such as Taylor's reprimands, her refusal to permit Tesso to participate in a faculty meeting, and the requirement that Tesso work long hours, do not qualify as adverse employment actions. *Cf. Hernandez*, 321 F.3d at 532 n.2 (listing activities that are and are not ultimate employment decisions).

Third, Tesso has failed to adduce evidence that would enable a reasonable jury to find

- 19 -

a causal link between the alleged protected activity and adverse employment action. Without such evidence, Tesso is unable to establish a prima facie case.

## C

Defendants rely on two arguments to support dismissal of Tesso's retaliation claim to the extent it is based on his termination: first, that Tesso cannot establish a causal link between the protected activity and the adverse employment action; and, second, that Tesso cannot establish that defendants' reason for terminating him is pretextual.

## 1

The court considers first defendants' contention that Tesso cannot establish a causal link between the protected activity and the adverse employment action. The standard for satisfying the causation element at the prima facie stage is "much less stringent" than the "but for" causation that a jury must find. *Montemayor*, 276 F.3d at 692. An employee must, at the least, "produce at least some evidence that the decisionmakers had knowledge of his protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993)). The temporal proximity, however, must be very close. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (stating that 1½ month period between protected activity and adverse action could, by

itself, establish causation)).

It is undisputed that Tesso filed his first charge of discrimination on September 7, 2010 and that he was terminated on October 7, 2010.  The close timing between the two events is sufficient to establish the requisite causal connection under the third prong of the prima facie case.  *See, e.g., O'Neal*, 237 F.3d at 1253; *Sizemore v. Dolgencorp of Tex., Inc.*, 2012 WL 1969951, at *11 (E.D. Tex. June 1, 2012) (holding that termination that followed less than one month after discrimination complaint was filed was sufficient to meet causal connection element of prima facie case).

2

Defendants next contend that Tesso cannot establish that defendants' reason for terminating him is pretextual.  They maintain that they terminated Tesso because, under the Policy, he was not qualified to instruct CAD courses.  Defendants argue that Tesso "offers nothing more than conclusory allegations, speculation, and his own subjective belief that Westwood [College] made these decisions with imagined retaliatory animus," which "is insufficient to defeat summary judgment."  Ds. Br. 22.

Tesso responds that a reasonable trier of fact could find that defendants terminated him, not on the basis of his credentials, but because he filed an EEOC charge.  He posits that defendants were aware that he was not qualified to teach in June and July 2010, since that is when, respectively, Global Credential reported its evaluation and reevaluation of Tesso but yet allowed him to teach in August 2010.  It was only when Tesso filed an EEOC charge that defendants terminated him in October 2010.  In other words, Tesso relies on the timing of

Westwood College's termination to prove that its reason is pretextual.

"[T]iming can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate[.]" *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417 n.9 (5th Cir. 2003) (alteration in original), *overruled on other grounds as recognized by Smith v. Xerox Corp.*, 602 F.3d 320, 327-28 (5th Cir. 2010).   But the Fifth Circuit has explicitly held that temporal proximity alone is insufficient to establish "but for" causation. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

> To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue.  In *Clark County School District v. Breeden*, the Supreme Court noted that cases that accept mere temporal proximity as sufficient evidence of causality *to establish a prima facie case* uniformly hold that the temporal proximity must be very close.  *Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation. But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.

*Id.* (addressing Title VII) (emphasis in original; citations, internal quotation marks, and ellipsis omitted).

Tesso has provided no evidence of retaliation except for temporal proximity and his mere suspicion that the termination was in retaliation for the EEOC charge, both of which are insufficient.  *See id.* at 808-09 (affirming summary judgment against plaintiff who relied only on temporal proximity and had no evidence, for example, that she was harassed about

EEOC complaint); *Pennington v. Tex. Dep't of Family & Protective Servs.*, 469 Fed. Appx. 332, 339 (5th Cir. 2012) (holding that subjective belief of retaliation is insufficient alone to establish pretext). For example, he has not identified any similarly situated employee who was not terminated despite his lack of qualification under the Policy. *Cf. Dooley v. Parks & Recreation for Parish of E. Baton Rouge, BREC*, 433 Fed. Appx. 321, 325 (5th Cir. 2011) (per curiam) (holding that plaintiff failed to rebut defendant's legitimate, nondiscriminatory reason because, *inter alia*, he did not identify any similarly situated employee who was not terminated after similar conduct). Accordingly, the court dismisses Tesso's retaliation claim to the extent it is based on his termination.

IX

Defendants also assert that the claims against Alta should be dismissed because Tesso has not exhausted his administrative remedies, Tesso lacks evidence demonstrating that he was employed by Alta, and the allegations against Alta are not distinct from those against Westwood College and should be dismissed on the same grounds. Tesso does not respond to these arguments. Accordingly, the court dismisses Tesso's discrimination and retaliation claims against Alta. *See Little*, 37 F.3d at 1076.

X

Regarding the grounds that the court has raised *sua sponte*, Tesso may file an opposition response, brief, and appendix within 21 days of the date this memorandum opinion and order is filed. The court will evaluate Tesso's papers before deciding whether to invite Westwood College to reply.

- 23 -

*   *   *

For the reasons explained, the court grants in part Westwood College's motion as to Tesso's discrimination and retaliation claims and raises *sua sponte* that Westwood College is entitled to summary judgment as to the balance of the grounds of Tesso's discrimination and retaliation claims.  The court grants the motion as to Tesso's claims against Alta.  Tesso may respond to the grounds the court raises *sua sponte*.

**SO ORDERED.**

August 8, 2012.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 24 -